UNITED STATES of America, Plaintiff

v.

Lorenzo Grode MARTIN and Reginiald Anthony Falice, Defendants

No. CIV.A. 203CV00157.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Feb. 17, 2005.

Thomas L. Eckert, United States Attorneys Office, Roanoke, VA, for Plaintiff.

Jeffrey Scott Hamilton, Gate City, VA, John Thadieu Harris, III, Wise, VA, for Defendant.

Lorenzo Grode Martin, Jonesville, VA, pro se.

Reginald Anthony Falice, Jonesville, VA, pro se.

## MEMORANDUM OPINION

WILLIAMS, Senior District Judge.

The plaintiff, United States of America, ("Government"), has filed a complaint alleging that defendants Lorenzo Grode Martin, ("Martin"), and Reginald Anthony Falice, ("Falice"), intending to harm the creditworthiness and reputations of the named debtors, did knowingly file financing statements with the Virginia State Corporation Commission, ("Virginia SCC"), in which Martin and Falice falsely identified themselves as secured parties. (Docket Item No. 1.) This matter is before the court on Plaintiff's Motion For Summary Judgment, (Docket Item No. 45), and defendants' motions to dismiss. (Docket Item Nos. 9, 64.) Jurisdiction over this matter is based upon 28 U.S.C.A. §§ 1331, 1345, 2201, 2202 (West 1999).

### I. Factual Background

Defendants are inmates serving life sentences at the United States Penitentiary in Lee County, Virginia, ("USP–Lee"). The record indicates that on October 8, 2003, Falice filed Uniform Commercial Code, ("UCC"), financing statements with the Virginia SCC in which he named himself as secured party for a debt of $8,000,000.00 allegedly owed by Patricial Conner, Robert Bruce King, Karen Williams and Clyde Hamilton. (Attachment 3 to Docket Item No. 45.) Martin is named in that financing statement as the person to whom acknowledgment of filing should be sent. The court notes that Conner is the Clerk of the Court for the U.S. Court of Appeals for the Fourth Circuit and King and Williams are judges who currently sit on the Fourth Circuit and were members of the panel that affirmed Falice's criminal conviction. The court further notes that Hamilton is a senior judge of the Fourth Circuit who also sat on the panel that affirmed Falice's criminal conviction and that Judge Williams was a member of the panel that affirmed Martin's criminal conviction.

That same day, Falice caused a second UCC financing statement to be filed with the Virginia SCC in which he named himself as the secured party for a $100,000,000.00 debt allegedly owed to him by Troy Miller, Jerry Jones and David Haas. (Attachment 3 to Docket Item No. 45.) Martin is named in the financing statement as the person to whom acknowledgment of filing should be sent. The Government has provided evidence that Miller and Jones are employed by the Bureau of Prisons, ("BOP"), at USP–Lee and Haas is a former employee of the BOP at USP–Lee who has since retired. (Attachment 4 to Docket Item No. 45.) In response to defendants' actions, the Government filed Correction Statements with the Virginia SCC as to each named debtor, incurring a cost of $140.00 in the process.

On December 31, 2003, the Government filed this action seeking (1) an injunction barring defendants from filing any financing statements with the Virginia SCC or any other lien with any public agency without prior approval of the court, (2) recovery of actual monetary damages jointly and severally against the defendants, (3) a declaration that the financing statements

filed by the defendants are false, fraudulent and without legal or factual basis and (4) joint and several reimbursement of costs and fees of the guardians ad litem and for any garnishment that may issue. (Docket Item No. 1.) On January 27, 2004, defendants filed a Motion To Dismiss claiming that the court lacked jurisdiction to hear the case. (Docket Item No. 9.) On July 30, 2004, the Government filed this Motion For Summary Judgment. (Docket Item No. 45.) Although the defendants failed to submit a timely response to Plaintiff's Motion For Summary Judgment, they did file a second Motion To Dismiss on January 7, 2005, which the court considers to be their response. (Docket Item No. 65.)

## II. Analysis

### A. Defendant's Motions To Dismiss

Defendants' various motions to dismiss allege multiple defects in the courts assertion of jurisdiction in this case. (Docket Item Nos. 9, 35, 65.) First, defendants argue that the case should be dismissed for lack of personal jurisdiction. (Docket Item No. 9.) Next, the defendants argue that the court lacks subject matter jurisdiction over the Government's claim. (Docket Item Nos. 9, 65.) Finally, defendants argue that the United States lacks standing to bring this action. (Docket Item Nos. 9, 65.)

■ First, defendants argue that the case should be dismissed for lack of personal jurisdiction. (Docket Item No. 9.) Federal Rule of Civil Procedure, ("Fed. R. Civ.P."), Rule 4(k)(1)(A) provides that "[s]ervice of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." " 'Because Rule 4(k)(1)(A) delimits the scope of effective federal service in terms of the limits on state court jurisdiction,' our in-

quiry into a federal court's jurisdiction pursuant to the Rule looks to the law of the state in which the federal court sits and the limits on the jurisdiction of that state's courts imposed by the Fourteenth Amendment." *Ciena Corp. v. Jarrard,* 203 F.3d 312, 317 (4th Cir.2000.). *See also Allied Towing .Corp. v. Great Eastern Petroleum Corp.,* 642 F.Supp. 1339, 1353 (E.D.Va.1986) ("The valid exercise of in personam jurisdiction by a federal district court over a nonresident defendant depends upon the proper service of process on the defendant and upon the defendant's amenability to suit in forum state").

First, the court must determine whether the Government effected adequate service of process upon the defendants. Fed. R.Civ.P. 4(e)(1) provides that:

> Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed ... may be effected in any judicial district of the United States ...pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State.

Fed.R.Civ.P. Rule 4(e)(1).

■ Regardless of whether the Government effected adequate service of process upon the defendants under Virginia law, the defendants' actions in responding to the Government's complaint clearly constituted a waiver of process in this case. In *Gilpin v. Joyce,* 257 Va. 579, 581, 515 S.E.2d 124(1999) (citation omitted), the Supreme Court of Virginia held that:

> 'An appearance for any other purpose than questioning the jurisdiction of the court—*because there was no service of process,* or the process was defective, or the action was commenced in the wrong county, or the like—is general and not

special, although accompanied by the claim that the appearance is only special.' ... A general appearance 'is a waiver of process, equivalent to personal service of process, and confers jurisdiction of the person on the court.' *Gilpin*, 257 Va. 579, 581, 515 S.E.2d 124. Here, the record shows that on January 27, 2004, defendants filed a "special appearance" contesting jurisdiction, (Docket Item No. 9), which was accompanied by an answer to the Government's complaint. (Docket Item No. 8.) The defendants' answer listed several grounds of defense, including lack of jurisdiction, breach of fiduciary duty, fraud and nondisclosure. (Docket Item No. 8.) This answer was subsequently followed by defendants' second answer, filed February 11, 2004, (Docket Item No. 14), and the answers of defendants' guardians *ad litem,* filed February 18 and 23, 2004. (Docket Item Nos. 19, 20.) Therefore, by responding to the merits of the Government's claim, defendants waived their right to service of process and submitted to the court's assertion of jurisdiction in this case. *See Nixon v. Rowland,* 192 Va. 47, 50, 63 S.E.2d 757 (1951). Finally, because all of the relevant actions occurred in Virginia, and because defendants themselves are residents of Virginia, the court need not address whether a Virginia state court's assertion of personal jurisdiction in this case would pose a conflict with the Fourteenth Amendment.[1]

Next, the defendants argue that the court lacks subject matter jurisdiction over the Government's claim. (Docket Item Nos. 9, 65.) When considering a Federal Rule of Civil Procedure, ("Fed. R. Civ.P."), 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "the court should consider 'whether plaintiff'[s] allegations, standing alone and taken as true plead[ed] jurisdiction and a meritorious cause of action.'" *Bane v. Va. Dep't of Corrs.,* 110 F.Supp.2d 469, 470 (W.D.Va.2000) (quoting *Dickey v. Greene,* 729 F.2d 957, 958 (4th Cir.1984)). In its complaint, the Government lists several different statutes which it contends provides the court with subject matter jurisdiction: 28 U.S.C. §§ 1331, 1345, 2201, 2202 and Fed.R.Civ.P. Rule 65. (Docket Item No. 1.) Title 28 U.S.C.A. § 1345 provides that "[e]xcept as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." 28 U.S.C.A. § 1345 (West 1999.) Because this is a civil action instituted by the United States, the court has subject matter jurisdiction over the claim.

■ Finally, defendants argue that the United States lacks standing to bring this action. (Docket Item Nos. 9, 65.) In this respect, the defendants argue that the United States is a legal fiction and as such does not qualify as an injured party. (Docket Item Nos. 9, 65.) In *United States v. Speight,* No. CIVA3:001791SRU, 2001 WL 539610, at *3 (D.Conn. May 17, 2001), the court noted that it is now "well settled that the United States has standing to bring ... an action brought by the United States to protect federal employees from harassment." *See also United States v. Poole,* 916 F.Supp. 861 (C.D.Ill.1996) ("the United States has standing to seek relief from actual or threatened interference with the performance of its proper governmental functions" (citation omit-

---

1. The court recognizes the defendants as Virginia residents despite their claims to be "state Citizen[s] of the Virginia Republic,"a sovereign territory which they claim to have established themselves because it is uncontested that the defendants are currently residing at USP-Lee where they are incarcerated. (Docket Item No. 9)

ted)). Here, the defendants filed liens based purely upon the actions of the alleged debtors in pursuit of their official government functions. Therefore, the Government has standing to bring this action against the defendants. Similarly, defendant's argument that the United States is not a competent plaintiff under Fed. R.Civ.P. Rule 9(a) is without merit. As the United States has standing to sue, it necessarily has the requisite capacity as well.

### B. The Government's Motion For Summary Judgment

The standard of review for a motion for summary judgment is well-settled; the court should grant summary judgment only when the pleadings, responses to discovery and record reveal that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990) (en banc), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991); *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from those facts in the light most favorable to the party opposing the motion. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita,* 475 U.S. at 587–88, 106 S.Ct. 1348; *Nguyen v. CNA Corp.,* 44 F.3d 234,

237 (4th Cir.1995); *Miltier v. Beorn,* 896 F.2d 848, 850 (4th Cir.1990); *Ross,* 759 F.2d at 364–65; *Cole v. Cole,* 633 F.2d 1083, 1092 (4th Cir.1980). In other words, the nonmoving party is entitled to have "the credibility of his evidence as forecast assumed." *Miller,* 913 F.2d at 1087 (quoting *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979)).

The only issue before the court in this case is the validity of the liens filed with the Virginia SCC. First, the court notes that all of the alleged debtors were either involved in the defendants' criminal cases or their subsequent incarceration. The defendants have offered no evidence of any actual commercial transactions taking place between themselves and the alleged debtors. Rather, they base their liens upon the alleged debtors' conduct in the performance of their official duties. (Docket Item No. 67.) Here, the defendants argue that, by virtue of their status as federal officials, the debtors are bound by some implied social covenant which, if breached, renders them personally liable for their actions. When confronting such claims, the courts have consistently refused to recognize liens based upon a claimed breach of contract or fraud by federal officials in the performance of their official responsibilities. *See Speight,* No. CIVA3:001791SRU, 2001 WL 539610, at *2 (D.Conn. May 17, 2001)("Although courts in the Second Circuit have yet to confront the issue of commercial liens filed against the property of federal officials on account of the performance of their official duties, every other federal court to address this issue has summarily found such liens improper" (citations omitted)). As the court noted in *United States v. Barker,* 19 F.Supp.2d 1380, 1383–84 (S.D.Ga.1998), such liens:

have no basis in federal or state law. Neither federal nor state law provides

that a citizen may file a lien on the property of a public official if the citizen believes that the official has not faithfully fulfilled his or her duties to the public .... Additionally, neither federal nor state law provides that a citizen may file a lien on the property of a public official for alleged wrongs committed by that official against the citizen without the existence of a judgment in the citizen's favor. The citizen must first take his grievance to court, and if he or she wins a judgment against the official *that is not paid*, then and only then may the citizen obtain a judgment lien against the official.

(emphasis in original). In this case, the defendants have produced no evidence that the liens they filed against these individuals were based on judgments rendered against the debtors. Furthermore, the defendants in their various filings concede that their claims against these debtors are based on alleged wrongs committed by these public officials and employees. Also, debtors Haas, Miller and Jones have filed affidavits specifically denying that they are indebted to the defendants in any amount. Therefore, there is no genuine issue of material fact in that the purported liens were not filed on the basis of any genuine commercial obligation owed to the defendants. Thus, the court finds that the United States is entitled to judgment as a matter of law finding that the UCC financing statements at issue were false and fraudulent in that they are without any basis in law or fact.

### III. Remedies Sought

Having already declared that defendants liens were false, fraudulent and without any basis in law or fact, the court must now decide whether the Government is entitled to the additional remedies it requests. Specifically the Government seeks (1) an injunction barring defendants from filing any financing statements with the Virginia SCC or any other lien with any public agency without prior approval of the court, (2) recovery of actual monetary damages jointly and severally against the defendants and (3) joint and several reimbursement of costs and fees, as well as the costs and fees incurred by defendants' guardians *ad litem*. (Docket Item No. 1.)

### A. Permanent Injunction

 The government first seeks the imposition of an injunction barring defendants from filing any financing statements with the Virginia SCC or any other lien with any public agency without prior approval of the court. The court notes that federal injunctive relief is an extreme remedy. *See Simmons v. Poe*, 47 F.3d 1370, 1382 (4th Cir.1995). In this regard, "[t]he equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *Simmons*, 47 F.3d at 1382; *see also Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (injunctive relief inappropriate unless, in addition to objectionable past conduct, there is also real and immediate threat of future injury). Furthermore, upon successfully showing that there exists an immediate threat of future harm, a party must then show that the requested injunctive relief would be in the public interest. *Lone Star Steakhouse & Saloon v. Alpha of Virginia*, 43 F.3d 922, 939 (4th Cir.1995).

 First, by knowingly filing baseless financing statements, the defendants have engaged in objectionable past conduct. Furthermore, as defendants have continued in their attempts to file liens against federal officials involved in their cases even after the Government filed this suit, there is a real and immediate threat of future injury. Next, the Government

has shown that it would be in the public interest for the court to issue an injunction in this case. As noted earlier, the liens of the defendants can only be viewed as an attempt, through intimidation and harassment, at preventing federal officials from performing their official duties, a purpose that is squarely against the public interest. Finally, the fact that there has not been an evidentiary hearing in this case is of no consequence, as "a court need not conduct an evidentiary hearing before issuing a permanent injunction if the affidavits and documentary evidence clearly establish the plaintiff's right to the injunction such that a hearing would not have altered the result." *Lone Star Steakhouse,* 43 F.3d at 939. Here, the evidence provided by the Government clearly established that the defendants' liens had no basis in law or fact, a conclusion which appears beyond dispute. Therefore, for the reasons stated above, the court finds that the Government has made the requisite showing necessary for the imposition of a permanent injunction.

### B. Joint And Several Liability For Actual Damages

The court must now decide whether the Government is entitled to any damages resulting from defendants' wrongful conduct. Here, the Government alleges damages in the amount of $140.00 for the seven correction statements it filed with the Virginia SCC. As I already have determined that defendants were well aware that their liens were without any basis in law or fact, I find the defendants jointly and severally liable to the Government for actual damages in the amount of $140.00.

### C. Costs And Attorneys' Fees

■ The Government also seeks an award of costs and attorneys fees, as well as the costs and fees incurred by defendants' guardians *ad litem.* Title 28 U.S.C.A. § 2412(a)(1), commonly known as the Equal Access To Justice Act, provides that:

> Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action.

In the case at hand, the Government was not required to pay a filing fee in order to institute the present action. However, because defendants are considered to be incompetent under Virginia law, the Government sought, and the court approved, the appointment of guardians *ad litem* to act on defendants' behalf. In *Kollsman, a Div. of Sequa Corp. v. Cohen,* 996 F.2d 702, 706 (4th Cir.1993), the Fourth Circuit Court of Appeals held that "the fees and costs of a guardian *ad litem* clearly may be taxed as costs under Rule 54." However, the court went on to state that "those costs and fees may not include services the guardian *ad litem* performs as attorney to the incompetent." In this regard, the court stated that:

> There is a distinction between an attorney *ad litem* and a guardian *ad litem* even though, as in this case, the same person performs in both roles. It is well recognized that the guardian *ad litem* serves essentially as an officer of the court. *Hull by Hull v. United States,* 971 F.2d 1499, 1510 (10th Cir.1992); *du-Pont v. Southern Nat. Bank of Houston,* 771 F.2d 874, 882 (5th Cir.1985); *Schneider v. Lockheed Aircraft Corp.,* 658 F.2d 835, 854 (D.C.Cir.1981); *Franz v. Buder,* 38 F.2d 605, 606 (8th Cir.1930). He is there not only to manage the litigation for the incompetent but also to

assist the court in performing its duty to jealously protect the incompetent's interests. As such, the guardian *ad litem*'s costs and expenses are appropriately chargeable under Fed.R.Civ.P. 54. An attorney *ad litem*, in contrast, provides the ordinary services of an attorney.

*Kollsman*, 996 F.2d at 706. Therefore, for the reasons stated above, the court finds that the Government may recover the fees and costs sought by defendants' representatives for the performance of their specific duties as guardians *ad litem*.

■ Next, the court must determine whether the Government is entitled to an award of attorneys fees. Title 28 U.S.C.A. § 2412(b) provides that:

Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

Although the Government has prevailed in this suit, it does not appear that it qualifies as a "party" as contemplated by § 2412. More specifically, § 2412(d)(2)(B) provides that:

"[P]arty" means (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the

civil action was filed, and which had not more than 500 employees at the time the civil action was filed; except that an organization described in section 501(c)(3) of the Internal Revenue Code of 1986 (26 U.S.C. 501(c)(3)) exempt from taxation under section 501(a) of such Code, or a cooperative association as defined in section 15(a) of the Agricultural Marketing Act (12 U.S.C. 1141j(a)), may be a party regardless of the net worth of such organization or cooperative association or for purposes of subsection (d)(1)(D), a small entity as defined in section 601 of Title 5;

Therefore, because the Government was not intended to qualify as a "party" for purposes of § 2412, it cannot qualify as a "prevailing party" as required for a recovery of attorneys' fees under § 2412(b).

### IV. Conclusion

Based on the above, I will grant the Government's Motion For Summary Judgment and deny the defendants' motions to dismiss.

An appropriate order will be entered.