**Antonio BUNDY, Petitioner**

v.

**Jeffrey BEARD, Secretary for the Pa. Department of Corrections, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 5, 2007.

Decided May 22, 2007.

Antonio Bundy, petitioner, pro se.

Michael J. McGovern, Asst. Counsel and Suzanne N. Hueston, Chief Counsel, Camp Hill, for respondent.

BEFORE: LEADBETTER, President Judge, FRIEDMAN, Judge, McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Presently before this Court are the preliminary objections in the nature of a demurrer filed by Respondent Jeffrey Beard, in his capacity as Secretary of the Pennsylvania Department of Corrections (DOC), in response to a *pro se* petition for review[1] filed by Antonio Bundy (Petitioner) in this Court's original jurisdiction. Petitioner is seeking declaratory relief. We now sustain DOC's preliminary objections and dismiss Petitioner's petition for review.

Petitioner is an inmate committed to the custody of DOC, and he is currently incarcerated at the State Correctional Institution at Somerset, Pennsylvania (SCI–Somerset).

In his petition for review, Petitioner alleges that on August 30, 2005, DOC issued a bulletin amending DC–ADM 803, "Inmate Mail and Incoming Publications." The amendment took effect on September 6, 2005. The changes complained of authorize DOC employees to confiscate Uniform Commercial Code (UCC) filing documents mailed to an inmate. The policy provides that upon confiscation:

> An unacceptable Correspondence/UCC Related Material form (attachment D) shall be completed and sent to the inmate. The inmate shall have 10 days from the date of the notice to file a grievance, in accordance with DC–ADM 804, 'Inmate Grievance System' advising the Grievance Coordinator of the legal basis and purpose for his/her possession of UCC related material.

Petitioner also avers that in early 2006, UCC materials were confiscated during a search of his cell. In addition, a request for UCC material through the library loan program was denied. On April 17, 2006, Petitioner filed a grievance (No. 149323), challenging the confiscation of legal mate-

---

**1.** Petitioner filed a pleading entitled "Action for Declaratory Judgment." By order, dated January 9, 2007, this Court determined that the filing should be treated as a petition for review addressed to this Court's original jurisdiction.

rial. Petitioner received an adverse decision, which he appealed. Petitioner avers that final review was denied on July 10, 2006, exhausting his administrative remedies.

Petitioner alleges that DOC violated the Commonwealth Documents Law, Act of July 31, 1968, P.L. 877, *as amended,* 45 P.S. §§ 1102–1602, and the Regulatory Review Act, Act of June 25, 1982, P.L. 633, *as amended,* 71 P.S. § 745.1–745.15, when it implemented changes to policy DC–ADM 803 without first publishing the changes. Petitioner further alleges that the policy violates his due process rights and his access to the courts.

■ Petitioner seeks a declaratory judgment: (1) invalidating DOC's practice of amending its policies without first publishing the amendments, and (2) prohibiting DOC from engaging in such practices in the future. DOC filed preliminary objections in the nature of a demurrer, which are now before this Court.[2]

DOC maintains that it is entitled to a demurrer because the petition for review fails to state a cause of action upon which relief may be granted. First, DOC argues that its bulletins governing internal policies are exempt from the Commonwealth Documents Law and the Regulatory Review Act pursuant to *Small v. Horn,* 554 Pa. 600, 722 A.2d 664 (1998). DOC further argues that its policy governing inmate's receipt of UCC documents provides adequate protections for inmates' constitutional rights. DOC states that its policy governing inmate UCC documents is a legitimate exercise of its administrative authority that is unrelated to the suppression of expression and is no broader than necessary to protect the interest involved.[3] DOC points out that DC–ADM 803 provides inmates with appropriate due process to obtain the necessary documents to file a legitimate lien. DOC argues that the filing of false UCC liens creates problems for criminal justice personnel, and it observes that a number of courts have recognized the burgeoning problem of inmates making meritless UCC filings against judges, prosecutors and corrections officials in retaliation for actions those officials have taken in their official capacities. *See United States v. Martin,* 356 F.Supp.2d 621 (W.D.Va.2005); *United States v. McKinley,* 53 F.3d 1170 (10th Cir.1995); *United States v. Reeves,* 782 F.2d 1323 (5th Cir.), *cert. denied,* 479 U.S. 837, 107 S.Ct. 136, 93 L.Ed.2d 79 (1986). DOC argues that to allow inmates to have unrestricted access to UCC related mate-

2. In ruling on preliminary objections in the nature of a demurrer, this Court must accept as true all well-pleaded facts and all inferences reasonably deducible therefrom. *Stone and Edwards Insurance Agency, Inc. v. Department of Insurance,* 151 Pa.Cmwlth. 266, 616 A.2d 1060 (1992). "However, we need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations or expressions of opinion." *Myers v. Ridge,* 712 A.2d 791, 794 (Pa.Cmwlth.1998), *petition for allowance of appeal denied,* 560 Pa. 677, 742 A.2d 173 (1999). The question presented by a demurrer is whether, in the facts averred, the law says with certainty that no recovery is possible. *Jackson v. Garland,* 424 Pa.Super. 378, 622 A.2d 969 (1993). A demurrer will not be sustained unless the court finds that on the face of a complaint the law will not allow recovery, and all doubts must be resolved against sustaining the demurrer. *Cohen v. City of Philadelphia,* 806 A.2d 905 (Pa.Cmwlth.2002).

3. In *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), the United States Supreme Court held that prison officials may implement policies which censor inmate correspondence if the regulation furthers a substantial government interest unrelated to the suppression of expression, the censorship is no broader than necessary to protect the interest involved, and the inmate whose mail is censored is given notice and an opportunity to be heard.

rials will only serve to empower them to engage in harassment, retaliation, attempted extortion, economic blackmail and paper terrorism against public officials. Finally, no other realistic remedy currently exists.

Petitioner counters that his petition for review states a cause of action upon which relief may be granted. Petitioner states that it is well-established that any amendment of a regulation by an executive agency of the Commonwealth of Pennsylvania must be promulgated through the procedures of the Commonwealth Documents Law. The requirement of promulgation is particularly applicable in the case at hand because ADM–803 concerns the interaction of prisoners and employees with the community and general public.[4] Without explanation, Petitioner states that promulgation is required because of the effect that the policy would have on the substantial rights of members of the public and the denial of notice and an opportunity to be heard.

**4.** In support of that position, Petitioner points to DOC's regulation found at 37 Pa.Code § 93.1, relating to the publication of regulations. It provides, in pertinent part that: "[t]hose portions of some [DOC] directives and policy statements which concern the interaction of [DOC] inmates and employees with the community at large are published." 37 Pa.Code § 93.1.

**5.** 37 Pa.Code § 93.8 reads as follows:
§ 93.8   Access to notary service and legal reference materials.
Reasonable access to notary services and the following legal reference materials will be afforded to all inmates:
(1) United States and Pennsylvania Constitution.
(2) Federal and Pennsylvania Rules of Civil and Appellate Procedure and local rules of Federal district courts.
(3) Law dictionary.
(4) Case law reporters containing Federal district and circuit court decisions and Pennsylvania appellate court decisions.

Petitioner further argues that DOC is not empowered to impair a prisoner's federal right to access the courts by requiring a prisoner to give reasons for use of UCC material. Petitioner notes that DOC's regulation at 37 Pa.Code § 93.8, requires inmates to have reasonable access to certain enumerated legal reference materials, including "other materials which may assist inmates to prepare their own legal documents."[5] Petitioner acknowledges that the United States Supreme Court has held that when a prison regulation impinges on an inmate's constitutional rights, the regulation is valid if it is reasonably related to a legitimate penological interest. Petitioner asserts that the "operative word" is "regulation." Petitioner takes the position that an unpublished bulletin or statement of policy does not rise to the level of a "regulation" and is not afforded such protection. Petitioner asserts that it is the duty of the courts, not DOC, to determine the merits of a UCC claim.[6] Moreover, the legislature provides adequate sanctions for falsely filed suits.[7]

(5) Title 18 U.S.C., 28 U.S.C.A. §§ 2241–2255 and 42 U.S.C.A. §§ 1981–1985.
(6) Titles 18 and 42 of the Pennsylvania Consolidated Statutes and Title 35 and 61, Purdon's Pennsylvania Statutes.
(7) Digest of Pennsylvania cases including volumes relating to criminal law and the table of cases.
(8) Other materials which may assist inmates to prepare their own legal documents.

**6.** In support of that position, Petitioner relies upon *Ex Parte Hull*, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941), in which the United States Supreme Court struck down a prison regulation requiring prisoners to first submit habeas corpus petitions to prison officials for review.

**7.** Petitioner points to Pennsylvania Rules of Civil Procedure 240(j), 1023.1 and 10234. Pa. R.C.P. No. 240(j) provides as follows:
If, simultaneous with the commencement of an action or proceeding or the taking of an

Based upon the above, Petitioner contends that he has stated a claim for a violation of 42 U.S.C. § 1983. *See Owens v. Shannon*, 808 A.2d 607 (Pa.Cmwlth. 2002) (to state a claim under Section 1983, a plaintiff must: (1) allege a violation of rights secured under the United States Constitution or United States law, and (2) show that the alleged violation was committed by a person acting under color of state law).

As background, the official regulations governing state correctional institutions and facilities are published at 37 Pa.Code §§ 93.1–93.13. 37 Pa.Code § 93.1 clarifies that only those DOC directives that concern the interaction of DOC inmates and employees with the community at large are published. The latest revision of these regulations was promulgated in 2001, apparently in accordance with the notice and comment requirements of the Commonwealth Documents Law and Regulatory Review Act. *See* 31 Pa. Bull. 2476 (May 12, 2001) and 6932 (December 22, 2001). DOC also adopts directives and/or bulletins to set forth policies relating to inmates. These directives and/or bulletins are not published in the Pennsylvania Code, and DOC takes the position that it need not go through the procedures set forth in the Commonwealth Documents Law and Regulatory Review Act when it adopts these directives and/or bulletins.

■ First, we will address the arguments as to whether the bulletin and/or directive relating to UCC materials was invalid because DOC failed to comply with the requirements for adopting regulations as set forth in the Commonwealth Documents Law and the Regulatory Review Act. In *Small*, the Pennsylvania Supreme Court was presented, in part, with the issue of whether DOC was required to comply with the requirements of the Commonwealth Documents Law and Regulatory Review Act when adopting a bulletin revoking permission for inmates to wear civilian clothing. The Court held that DOC's bulletins are not regulations for purposes of the Commonwealth Documents Law or the Regulatory Review Act. The Court, in reaching the holding, wrote that the bulletins "do not constitute regulations, but instead embody decisions that are inherently committed to the agency's discretion...." *Small*, 554 Pa. at 612, 722 A.2d at 670. The Court recognized that DOC's bulletins fit into a category of agency decisions that are inherently committed to the agency's sound discretion and that cannot reasonably be subjected to the "normal public participation process." The Court wrote:

> Because of the unique nature and requirements of the prison setting, imprisonment 'carries with it the circumscription or loss of many significant

---

appeal, a party has filed a petition for leave to proceed in forma pauperis, the court prior to acting upon the petition may dismiss the action, proceeding or appeal if the allegation of poverty *is untrue or if it is* satisfied that the action, proceeding or appeal is frivolous.

Pa. R.C.P. No. 1023.1 requires that a person filing a pleading, motion or other paper to certify, in part, that the document "is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation" and the claims "are warranted by exist-

ing law or by nonfrivolous argument" and "have evidentiary support." Pa. R.C.P. No. 1023.4 imposes sanctions for violations of Pa. R.C.P. No. 1023.1. However, UCC filings are not the subject of the Pennsylvania Rules of Civil Procedure.

Petitioner further points to Section 3 of the Prison Litigation Reform Act (PLRA), 42 Pa. C.S. § 6602(e), which allows for the dismissal of prison conditions litigation under certain circumstances. We note that the UCC filings at issue do not fall under the category of "prison conditions litigation." Therefore, Section 3 of the PLRA is inapplicable.

rights ... to accommodate a myriad of institutional needs ... chief among which is internal security. Accordingly, [DOC] must enforce reasonable rules of internal prison management to ensure public safety and prison security. These rules must be modified as conditions change, different security needs arise, and experience brings to light weaknesses in current security measures. Where, as here, the measure has at most an incidental effect on the general public, it is reasonable to conclude that the Legislature did not intend the measure to be subjected to the 'normal participation process.'

*Small,* 554 Pa. at 610–11, 722 A.2d at 669–70 (citations omitted).

Therefore, in light of our Supreme Court's holding in *Small,* we must conclude that Petitioner's argument that DC–ADM 803 is invalid because DOC failed to comply with the requirements of the Commonwealth Documents Law and Regulatory Review Act when it adopted the bulletin and/or directive is without merit. Hence, Petitioner fails to state a claim upon which relief may be granted under either the Commonwealth Documents Law or the Regulatory Review Act.

■ Next, we will address the arguments relating to whether DC–ADM 803's prohibition of UCC materials constitutes a violation of Petitioner's constitutional rights or whether it provides adequate protections to inmates' constitutional rights. The United States Supreme Court has held that "when a prison regulation impinges on an inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological purposes." *Turner v. Safley,* 482 U.S. 78, 87, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). In holding that a restrictive regulation is valid if it is reasonably related to legitimate penological purposes, the United States Supreme Court in *Turner* explained the importance of allowing prison officials to exercise discretion in this area.[8] It wrote:

> In our view, such a standard is necessary if 'prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations.' Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration. The rule would also distort the decisionmaking process, for every administrative judgment would

---

**8.** In *Beard v. Banks,* —— U.S. ——, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006), the United States Supreme Court similarly emphasized the deference that must be given to the view of prison officials. In *Beard,* an inmate brought a challenge to a policy of DOC restricting certain prisoners' access to newspapers, magazines and photographs. The United States District Court for the Western District of Pennsylvania granted summary judgment in favor of DOC. The United States Court of Appeals for the Third Circuit reversed. The United States Supreme Court granted certiorari, and reversed and remanded the matter. In doing so, the United States Supreme Court emphasized the defer-

ence to be afforded prison officials when it wrote:

> We recognize that at this stage we must draw 'all justifiable inferences' in [the inmate's] 'favor.' In doing so, however, we must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard,* —— U.S. at ——, 126 S.Ct. at 2578 (citations omitted).

be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand. Courts inevitably would become the primary arbiters of what constitutes the best solution to every administrative problem, thereby 'unnecessarily perpetuat[ing] the involvement of the federal courts in affairs of prison administration.'

*Turner*, 482 U.S. at 89, 107 S.Ct. 2254 (citations omitted).

Applying the holding of *Turner*, the Supreme Court has set forth four (4) queries that a court should employ to determine the reasonableness of a prison regulation:

(1) Is there a valid, rational connection between the regulation and the legitimate governmental interest put forward to justify it?

(2) Are there alternative means of exercising the right that remain available to the inmate?

(3) What impact will accommodating the asserted Constitutional right have on corrections officers, other inmates, and on the allocation of prison resources?

(4) Are there ready alternatives for furthering the governmental interest?

*See Banks.*

We are confident that DC–ADM 803 provides adequate protections to inmates' constitutional rights and meets the requirements set forth in *Turner* and *Banks*. First, we agree with DOC that there is a "valid, rational connection" between the policy and a legitimate governmental interest. The policy curtails the filing of bogus and fraudulent UCC liens by inmates against criminal justice personnel and others, thereby reducing the economic and emotional hardship created by such bogus filings. The policy also reduces the amount of time that criminal justice personnel must waste dealing with these bogus filings, and it prevents inmates from engaging in fraudulent actions while in DOC's custody. We note that in *United States v. Brum*, No. 1:05–CV–110, 2005 WL 1606584, 2005 U.S. Dist. LEXIS 21208 (E.D. Texas July 1, 2005), the United States District Court for the Eastern District of Texas recognized the legitimate interest that the government has in preventing the filing of bogus UCC liens.[9]

---

9. In *Brum*, the District Court issued an order permanently enjoining the defendant from filing, causing to be filed, or attempting to file liens against several federal officials.

> The filing of false liens against [the Chief Judge] and [the Assistant United States Attorney] would *cause* irreparable injury. The filing of liens caused the Chief Judge and the [Assistant United States Attorney] to set aside time from their official jobs to try and clear their credit history and resolve the UCC filings. In this computerized age, a single bad credit rating or notation will likely be cross referenced in records across the country. There is no easy way to correct the records, and once corrected in one location, no assurance that the misinformation will not constantly be resurrected by the interconnected *net* of computers which now store credit and financial information.... [The defendant] has no right to file, and no legitimate interest in filing false liens and documents against public officials. In the unlikely event that he ever obtains a legitimate judgment against somebody, it will be easy for him to obtain permission to file the appropriate lien. The court recognizes [the inmate's] First Amendment rights, but 'there is no First Amendment right to harass, intimidate, and attempt to extort federal officials.' The harm sought to be protected is greatly outweighed by the minimal inconvenience to be *imposed on* [the *defendant*], that of obtaining leave before filing documents purported to be liens.

> Lastly, the public interest is greatly advanced by the granting of this injunctive relief. Public officials will be able to perform their duties without being threatened by harassing liens. Moreover, if there is a legitimate lien, [the defendant] is not foreclosed from obtaining leave before filing the public document.

Second, as the policy is written, there is an alternative means available to inmates to file genuine UCC related claims. Under the policy, where an inmate can show a legitimate need for UCC related documents, he is permitted to have them.[10] Third, accommodation of any perceived right to UCC related materials in these circumstances will only serve to encourage the filing of bogus claims, thereby potentially burdening criminal justice employees with the hardship from false UCC filings and distracting them from their duties. Fourth, no ready alternative currently exists to prevent inmates from engaging in the filing of false UCC liens.

Accordingly, we must sustain the preliminary objections filed by DOC.

### ORDER

AND NOW, this 22nd day of May, 2007, the preliminary objections filed by Respondent Jeffrey Beard, in his capacity as Secretary of the Pennsylvania Department of Corrections, are hereby sustained. Petitioner Antonio Bundy's petition for review is hereby dismissed.

*Brum,* 2005 WL 1606584, at *3, 2005 U.S. Dist. LEXIS at 21208, at *7.

**10.** We note that Petitioner does not assert that he has a legitimate need for UCC related documents. Instead, he argues only that he has an absolute right to possess UCC related materials.